**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AMGUARD INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No: 1:22-cv-197-ECM** |
| **THE ESTATE OF DONALD LEWIS** | ) | |
| **SCHULMAN, formerly d/b/a DONALD** | ) | |
| **SCHULMAN WRECKER SERVICE; THE** | ) | |
| **ESTATTE OF DONALD SHANE** | ) | |
| **SCHULMAN; JACOB HANSEN; JAYME** | ) | |
| **HARRISON; LAGARA REECE; AND JAN** | ) | |
| **JOHNSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff AmGUARD Insurance Company ("AmGUARD"), by and through its attorneys, files this Second Amended Complaint for Declaratory Judgment against Defendants, the Estate of Donald Lewis formerly d/b/a Donald Schulman Wrecker Service, the Estate of Donald Shane Schulman, Jacob Hansen, Jayme Harrison, Lagara Reece, and Jan Johnson, and in support says as follows:

**INTRODUCTION**

On April 10, 2023, the Court entered an Order (Doc. 51) granting AmGUARD's Motion to Substitute Party and Notice of Hearing (Doc. 50) substituting the Estate of Donald Shane Schulman as defendant in place of the previously-served defendant Donald Shane Schulman (hereinafter referenced collectively as "Shane").

This Second Amended Complaint additionally replaces references in AmGUARD's Amended Complaint (Doc. 33) to the previously-named, but never served, defendant Donald

Lewis Schulman ("Donald") d/b/a Donald Schulman Wrecker Service ("DSW"), with the Estate of Donald Lewis Schulman formerly d/b/a Donald Schulman Wrecker Service. No other substantive changes have been made to the Amended Complaint.

## NATURE OF ACTION

1.      AmGUARD brings this action pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 for a declaration regarding the parties' rights and obligations under Businessowner's Liability Policy No. K2GP212980 issued to named insured DSW for the policy period February 10, 2021 to February 10, 2022 (the "Policy").[1] Named insured DSW has specifically sought coverage under the Policy's "**BUSINESS AUTO COVERAGE FORM**" CA 00 01 10 13 (hereinafter the "COVERAGE FORM") in relation to and as a result of a November 10, 2021 automobile accident (the "Claim") involving (A) a DSW vehicle operated by Shane and (B) two other vehicles owned, operated, and/or occupied by Jacob Hansen, Jayme Harrison, Lagara Reece, and Jan Johnson, who are collectively hereinafter referred to as the "Claimants."

2.      For the reasons set forth below, AmGUARD seeks a declaration that it has no duty to defend or indemnify DSW in connection with the Claim because: (1) the Policy is void and due to be rescinded based upon material misrepresentations and omissions made by DSW in its policy application[2] regarding the identification and disclosure of all listed drivers of insured vehicles, contrary to the Policy Application and the Renewal Binder Confirmation; (2) the Policy is void based upon DSW's violation and breach of the Policy's General Condition concerning Concealment, Misrepresentation Or Fraud due to the material and fraudulent misrepresentations

---

[1] A true and correct copy of the Policy was attached to the original Complaint as **Exhibit 1** (Doc. 1-1).
[2] True and correct copies of DSW's January 14, 2021 Towing Insurance Application and February 9, 2021 Renewal Binder Confirmation were attached collectively to the original Complaint as **Exhibit 2** (Doc. 1-2).

2

and omissions made by DSW to the investigating officer and AmGUARD during the investigation and reporting of the Claim; and (3) coverage is precluded under the Policy's Loss Conditions based upon DSW's violation, breach, and failure to comply with the "Notice" and "Cooperation" clauses due to material misrepresentations and omissions made by DSW to the investigating officer and/or material misrepresentations and omissions made by DSW to AmGUARD and its third-party administrator, North American Risk Services ("NARS"), in its investigation of the Claim.

## **THE PARTIES**

3.    Plaintiff, AmGUARD Insurance Company, is a Pennsylvania company with its principal address in Wilkes Barre, Pennsylvania.

4.    Donald Lewis Schulman d/b/a Donald Schulman Wrecker Service, up until his death on or about February 7, 2022 (*see* Doc. 31), operated DSW as an unincorporated Alabama sole proprietorship located at 435 Southgate Road, Dothan, Alabama 36301. At the time of death, he was a resident citizen of the State of Alabama whose permanent residence was located at 1249 W. Selma Street, Dothan, Alabama 36301.

5.    Kaz Espy, Esq., has been appointed administrator ad litem of the Estate of Donald Lewis Schulman in the Probate Court of Houston County, Alabama in accordance with Alabama law. (See Exhibit A, hereto.) For diversity purposes, the administrator takes on the deceased's Alabama citizenship.  *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . .").

6.    Donald Shane Schulman, who as at all times material herein preceding his death on January 10, 2023, an adult resident citizen of Dothan, Alabama, was the driver of the commercial vehicle owned by DSW in the underlying accident forming the basis of the Claim. Shane's

permanent residential address was at all times material herein preceding his death 196 Roy Martin Road, Dothan, Alabama 36301.

7.    Defendant, Jacob Hansen, has at all times since the filing of the original Complaint been an adult resident citizen of Dothan, Alabama who may be served at 511 Explorer Circle, Dothan, Alabama 36301.

8.    Defendant, Jayme Harrison, has at all times since the filing of the original Complaint been an adult resident citizen of Dothan, Alabama who may be served at 1847 S Alice Street, Dothan, Alabama 36301.

9.    Defendant, Lagara Reece, has at all times since the filing of the original Complaint been an adult resident citizen of Cottonwood, Alabama who may be served at 2399 Decatur Road, Cottonwood, Alabama 36320.

10.    Defendant, Jan Johnson, has at all times since the filing of the original Complaint been an adult resident citizen of Cottonwood, Alabama who may be served at 2399 Decatur Road, Cottonwood, Alabama 36320.

## JURISDICTION AND VENUE

11.    Plaintiff and Defendants are citizens of different states.  Based on the indemnity and duty-to-defend coverage exposure that Plaintiff faces from the underlying multi-vehicle accident detailed herein, the matter in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

12.    Separately, Plaintiff's requested declaration that the Policy's MCS-90 endorsement does not cover the underlying multi-vehicle accident is a federal question.  *See Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) ("The sole question the Court must answer today is whether the MCS-90 endorsement covers the [] accident. This is a question of federal law.").

4

Accordingly, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over the MCS-90 endorsement claim and, for the remaining non-federal claims, has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[3]

13.    This Court has jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration" pursuant to 29 U.S.C. §§ 2201 and 2202. An actual and ripe controversy has arisen between the parties regarding any coverage owed under the Policy.

14.    A substantial part of the events, acts, and omissions giving rise to this controversy occurred in this judicial district. Thus, this Court is the proper venue pursuant to 28 U.S.C. § 1391.

## **BACKGROUND**

15.    DSW is a towing business located at 433 Southgate Road, Dothan, AL 38301. DSW allegedly consists of one employee, Donald, and three towing vehicles.

16.    When DSW applied for the AmGUARD Businessowner's Policy and completed the Driver Schedule, it disclosed Donald as its only employee and driver.[4]

17.    Notably, DSW represented that Donald was the only driver of DSW vehicles despite the fact that his son, Shane, occasionally assisted Donald with DSW's operations, including operating DSW vehicles.[5]

---

[3] With regard to this Court's expressed doubt about "whether the policy's MCS-90 endorsement provides coverage confers federal question jurisdiction pursuant to 28 U.S.C. § 1331," *see* Doc. 30 at 1 n.1, Plaintiff states for purposes of clarification that the requested declaration concerning MCS-90 endorsements involves a purely legal question of broad application and significance to interstate motor carriers that engage in business territorial footprint of the Eleventh Circuit Court of Appeals. Plaintiff thus believes a federal question is presented in accordance with *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U. S. 308 (2005). Notwithstanding the foregoing, this Court need not decide this issue because federal diversity jurisdiction exists under § 1332.

[4] *See* Ex. 2, Driver Schedule.

[5] It should come as no surprise that Donald chose not to list Shane on DSW's Driver Schedule of the Application given his driving history and the fact that he had been excluded from coverage in other policy periods. For example, on or about January 8, 2019, Shane was driving a 2015 Ford F250 Crew 4x4 in Houston County when he drove off the road and struck a tree. Shane relayed to the investigating officer

18.     The underlying Claim arises from a November 10, 2021 accident in which Shane, while driving a vehicle owned by DSW, rear-ended a vehicle driven by Jacob Hansen and owned by Jayme Harrison, which, in turn, was pushed into the rear of a vehicle driven by Lagara Reece in which Jan Johnson was riding as a passenger. As a result of the collision, Claimants contend they have suffered property damage and serious injuries requiring extensive medical treatment.

19.     At the time of the collision, Shane was returning from dropping a vehicle at a house on behalf of DSW.

20.     Previously, Shane had been expressly excluded from coverage under the policy during 2018-2019. Shane was expressly excluded again following the subject incident in 2021-2022.[6] Nevertheless, at the time of the application for the Policy at issue, Donald did not disclose to AmGUARD that Shane would be operating DSW vehicles, despite the fact that the application contained an express inquiry, answered in the affirmative by Donald, that he had identified "every possible driver of an insured vehicle including those who may fill in during peak periods and emergencies? (Such as members of households, friends, etc.)?"[7]

---

that he attempted to answer his phone, which caused him to lose control of the vehicle. *See* Ala. Uniform Traffic Crash Report # 9602819 attached to the original Complaint as **Exhibit 3** (Doc. 1-3). Then, on or about January 15, 2020, Shane was driving a DSW vehicle, a 2010 Ford F650SD, when he rear-ended a Nissan Rogue sitting in front of him at an intersection. Shane reported to the investigating officer that he reached down to answer his phone when his foot slipped off the brake, causing the vehicle to roll into the Rogue in front of him. *See* Ala. Uniform Traffic Crash Report # 0605456 attached to the original Complaint as **Exhibit 4** (Doc. 1-4). On or about September 27, 2021, Shane Schulman was driving a 2009 Mercedes Smart Passion when he and a 2003 Lincoln Town Car collided in Dothan, Alabama. The facts of this collision were in dispute; however, the investigating officer's Narrative notably states that Shane and the other involved driver were both "NOT VERY FORTH COMING (sic) WITH THE DETAILS OF THE WRECK." *See* Ala. Uniform Traffic Crash Report # 1710258 attached to the original Complaint as **Exhibit 5** (Doc. 1-5).

[6] *See* exclusion correspondence attached to the original Complaint as **Exhibit 6** (Doc. 1-6).

[7] *See* Ex. 2.

I.     **Donald d/b/a DSW's Towing Insurance Application**

21.     Prior to the issuance of the instant Policy, on January 14, 2021, DSW completed and signed a Towing Insurance Application (the "Policy Application"). The Policy Application was executed by Donald.[8]

22.     In completing the Policy Application on behalf of DSW, Donald responded to a series of questions seeking material information regarding, among other things, potential drivers; vehicles leased, loaned, or rented to others; and an acknowledgement that all new drivers must be submitted to the insurance company for approval prior to hiring.

23.     First, the Policy Application asked if the Applicant (DSW) understood all new drivers must be submitted to the insurance company for approval prior to hiring. DSW stated yes:

6.  Does the Applicant understand all new drivers must be submitted to the insurance company for approval prior to hiring? ............................................................................................................ ☒Yes ☐No

24.     Second, the Policy Application asked DSW if any vehicles were leased, loaned, or rented to others. DSW stated no:

10. a.  Any vehicles leased, loaned or rented to others? ............................................................. ☐Yes ☒No

25.     Third, the Policy Application asked DSW if it allowed anyone to operate under its permit. DSW stated no:

g.  Does the Applicant allow anyone to operate under its permit? ............................................................. ☐Yes ☒No

---

[8] *Id.*

26.     Fourth, the Policy Application asked DSW how its drivers were paid. DSW stated by salary:

> 32. How are Drivers paid?  ☐Hourly  ☐Weekly  ☐Commission  ☒Salary

27.     Fifth, the Policy Application asked if the Drivers were DSW's employees. DSW stated yes:

> 34. a.  Are the Drivers the Applicant's employees? ..................................................... ☒Yes  ☐No

28.     Sixth, the following is a full and complete driver listed provided by DSW with its application. The only listed driver is Donald, born XX/XX/1945:

**KBK DRIVER LIST**                                                Date _01/14/2021_

| Driver's Name | DOB | Date Of Employment | Status | Commercial Driving Experience | Tow Truck Experience | Company Use Only | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | VIOL | ACC | DEL | ADD |
| 1. DONALD SCHULMAN | ███/1945 | | ☐Part-Time ☒Full-Time | 25 | | 0 | 0 | | |
| 2. | | | ☐Part-Time ☐Full-Time | | | | | | |
| 3. | | | ☐Part-Time ☐Full-Time | | | | | | |

29.     Seventh, the policy application asked DSW if it had identified every possible driver of an insured vehicle including those who may fill in during peak periods and emergencies (such as members of households, friends, etc.). Donald stated "yes." Donald further verified that he understood and agreed that on any proposed addition or substitution of a driver, the MVR must be submitted to the insurance company for approval prior to hire:

> Have you identified every possible driver of an insured vehicle including those who may fill in during peak periods and emergencies? (Such as members of households, friends, etc.)? ...................................................................................... ☒Yes  ☐No
>
> DONALD SCHULMAN DBA SCHULMAN WRECKER SERVICE
> (name of Applicant)
> , understands and agrees that on any proposed addition or substitution of driver, the MVR must be submitted to the insurance company for approval prior to hire.
>
> ☒ Donald Schulman
> Applicant's Signature

30.     On February 9, 2021, based upon the information provided in the Policy Application, DSW was issued a Renewal Binder Confirmation. It provided, in part, "By accepting this binder, the applicant agrees, represents and warrants that the statements and information

contained in the application for insurance and any supplementary information are true and correct and that no facts have been suppressed or misstated."[9]

31.     DSW and Donald were aware that Shane had driven for DSW in the past and would continue to drive for DSW at the time of completion of the Policy Application. Despite this knowledge, Donald, on behalf of DSW, did not disclose such matters to AmGUARD or accurately complete the Policy Application.

32.     AmGUARD subsequently issued the Policy in reliance on the material and fraudulent misrepresentations, statements, and omissions in the Policy Application as to DSW's Driver Schedule.

## II.     Pertinent Policy Provisions

33.     As a prerequisite to any duty on behalf of AmGUARD to provide coverage, the insured DSW had to fully comply with certain delineated "**BUSINESS AUTO CONDITIONS**" contained in Section IV of the COVERAGE FORM, specifically including various "**Loss Conditions**" obligations found in Paragraph A thereto.  Of note for current purposes, DSW was obligated to comply with "Notice" and "Cooperation" clauses respectively set forth therein at in Paragraphs A.2.a.(1) and A.2.b.(3).

34.     Specifically, the referenced sections of the Policy provide:

> **SECTION IV – BUSINESS AUTO CONDITIONS**
> The following conditions apply in addition to the Common Policy Conditions:
> **A. Loss Conditions**
>        ***

---

[9] *Id.*

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

    **(1)** How, when and where the "accident" or "loss" occurred;

***

**b.** Additionally, you and any other involved "insured" must:

***

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

35.    Furthermore, Paragraph B in Section IV, titled "**General Conditions**," contains a "**Concealment, Misrepresentation Or Fraud**" provision (hereinafter the "FRAUD CONDITION") wherein the COVERAGE FORM is deemed "void in any case of fraud" related thereto or in the event that DSW or any other insured intentionally conceals or misrepresents a material fact concerning the Coverage form or a claim thereunder.

36.    Specifically, the referenced section of the Policy provides:

**B. General Conditions**

***

10

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

37.     As a corollary to FRAUD CONDITION, the Policy includes Form BA 9911 0317, which is a stand-alone "**NOTICE**" specifically applicable to "**UNREPORTED DRIVERS - NEW DRIVERS**" (hereinafter the "UNREPORTED DRIVER FORM"), which is expressly made "**APPLICABLE TO ALL COVERAGE PARTS**" by the "**COMMON POLICY DECLARATIONS**," Form IL DS 00 09 08.  The Unreported Driver Form provides in its entirety:

## NOTICE
## UNREPORTED DRIVERS – NEW DRIVERS

ALL NEW OPERATORS AND DRIVERS HIRED OR DESIGNATED DURING THE TERM OF THIS POLICY MUST BE IMMEDIATELY REPORTED TO THE COMPANY. YOUR SCHEDULE OF DRIVERS IS MATERIAL TO THE RISK WE INSURE. YOUR FAILURE TO REPORT A NEW OPERATOR OR DRIVER IS A MATERIAL MIS-REPRESENTATION OF THE RISK WE INSURE AND INCREASES THE HAZARD INSURED AGAINST. FAILURE TO REPORT A NEW OPERATOR OR DRIVER MAY RESULT IN CANCELLATION OF YOUR POLICY.

NEWLY AUTHORIZED OPERATORS AND DRIVERS SHOULD BE REPORTED TO YOUR AGENT.

38.     Under the UNREPORTED DRIVER FORM, a "FAILURE TO REPORT A NEW OPERATOR OR DRIVER" on DSW's part is thus facially deemed a risk-based "MATERIAL MIS-REPRESENTATION" that "MAY RESULT IN CANCELLATION."

11

39. Two other provisions are relevant to this Declaratory Judgment action. First, Section II.A of the COVERAGE FORM ("**COVERED AUTOS LIABILITY COVERAGE**"; "**Coverage**") expressly provides that Plaintiff owes DSW no "duty to defend" "against a 'suit' seeking damages for 'bodily injury' or 'property damage' … to which this insurance does not apply."

40. Second, the Policy includes Form MCS-90 0117, titled "Endorsement for Motor Carrier Policies of Insurance for Public Liability" (hereinafter the "MCS-90 ENDORSEMENT"), that relevantly:

   a. defines "***Motor Vehicle***" as "a vehicle [or] truck … used on a highway for transporting property …";

   b. states that its purpose is "to assure compliance by the insured …, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA)"; and

   c. imposes a payment obligation as to "any final judgment recovered against the insured for public liability resulting from negligence in the operation … of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 …."

## III. **The Accident**

41. On November 10, 2021, Shane, while driving a DSW vehicle, rear ended a vehicle driven by Jacob Hansen, which, in turn, was pushed into the rear of a vehicle driven by Lagara Reece in which Jan Johnson was riding as a passenger.

12

42.     Notably, at the time of the collision, Shane, who had not been listed by DSW on its Driver's Schedule and had not been reported to AmGUARD as a DSW driver, was returning from dropping a vehicle at a house on behalf of DSW.

43.     After the collision, Donald, who was several vehicles behind the collision and did not witness the accident, misrepresented to the investigating officer that he was the driver of the DSW vehicle. In fact, Donald provided the investigating officer with his version of the events of the accident (as relayed to him by Shane) and provided his license to the officer for completion of Alabama Uniform Crash Report # 1730547 (the "Report").

44.     Notably, Shane did not speak with the investigating office at the scene of the accident and his name appears nowhere in the Report.

45.     To be sure, Alabama Uniform Traffic Crash Report # 1730547 lists Donald Lewis Schulman as the driver of the DSW vehicle in the underlying collision.[10]

46.     The next day, on November 11, 2021, when reporting the claim to his insurance agent, Donald misrepresented that he, as the "Owner" was the driver of the DSW vehicle at the time of the accident.

47.     Then, on November 12, 2021, the NARS claims adjuster (on behalf of AmGUARD), contacted DSW to investigate the reported claim. The adjuster was referred to Donald who, for the third time, provided the details of the accident and again misrepresented that he was driving the DSW vehicle at the time of the accident.

IV.     **The AmGUARD Investigation and Reservation of Rights Defense**

---

[10] *See* Alabama Uniform Traffic Crash Report # 1730547 attached to the original Complaint as **Exhibit 7** (Doc. 1-7).

48.     Under a full and complete Reservation of Rights, AmGUARD agreed to defend DSW against the underlying accident claims while its investigation continued into DSW's material misrepresentations and omissions in the Policy Application, DSW's material misrepresentations to the investigating law enforcement officers following the accident, and DSW's material misrepresentations to AmGUARD through its third party administrator, NARS, as well as the other coverage issues raised herein.

49.     Because discovery in this matter could disclose coverage defenses in addition to those set forth herein, AmGUARD respectfully reserves its right to seek leave of court to raise any additional defenses later disclosed in discovery and/through its continuing investigation.

## COUNT I
### DECLARATORY JUDGMENT THAT POLICY IS VOID AND SHOULD BE RESCINDED BASED ON MISREPRESENTATIONS AND OMISSIONS IN THE POLICY APPLICATION

50.     AmGUARD repeats and incorporates the factual allegations contained in Background paragraphs 15 through 49 of the Complaint as though fully set forth herein.

51.     Per the Policy Application, DSW understood all new drivers must be submitted to the insurance company for approval prior to hiring.

52.     Per the Policy Application, DSW materially misrepresented that it did not lease, loan or rent any vehicles to others.

53.     Per the Policy Application, DSW materially misrepresented that it did not allow anyone to operate under its permit.

54.     DSW materially and fraudulently misrepresented in the Policy Application that it identified "every possible driver of an insured vehicle, including those who may fill in during peak periods and emergencies, such as members of households, friends, etc.," by naming Donald as its

14

only driver.

55.     DSW's misrepresentations in the Policy Application were material and fraudulent given Shane's history and continued practice of driving DSW's vehicles in furtherance of DSW's business, including driving the vehicle that was involved in the underlying accident forming the basis of the Claim.

56.     DSW made fraudulent misrepresentations and omissions in the Policy Application by not listing Shane as a potential driver despite the fact that it was known to DSW that Shane was actively driving DSW vehicles in furtherance of DSW's operations.

57.     Such misrepresentations and omissions were fraudulent, material to the acceptance of the risk of loss, and AmGUARD would not have issued the Policy at all or on the same terms if it had known that Shane was a driver or operator of DSW's insured vehicles.

58.     Moreover, under the UNREPORTED DRIVER FORM, DSW's failure to disclose Shane as a company driver is a misrepresentation warranting cancellation of the Policy by Plaintiff.

59.     As a result of DSW's misrepresentations and omissions, the Policy is void, and AmGUARD is entitled to rescind the Policy under Ala. Code § 6-5-100, *et seq.* and/or Ala. Code § 27-14-7(a)(1)-(3).

60.     AmGUARD is entitled to a judicial declaration stating that: (a) the Policy did not take effect due to the misrepresentations and omissions in the Policy Application, and (b) the Policy is void as a result of the misrepresentations and omissions.

61.     AmGUARD is further entitled to a judicial declaration that it owes DSW no duty to defend or indemnify as to the Claim.

## COUNT II
### DECLARATORY JUDGMENT THAT THE POLICY IS VOID, SUBJECT TO CANCELLATION, AND/OR DOES NOT AFFORD COVERAGE BASED ON

15

## CONCEALMENT, MISREPRESENTATIONS OR FRAUD

62.     AmGUARD repeats and incorporates the factual allegations contained in Background paragraphs 15 through 49 of the Complaint as though fully set forth herein.

63.     On November 10, 2021, at the scene of the collision, DSW, through its owner Donald Lewis Schulman, fraudulently and intentionally misrepresented to the investigating officer that he was the driver of the DSW involved in the collision and not Shane Schulman.

64.     On November 11, 2021 DSW, through its owner Donald Lewis Schulman, fraudulently and intentionally misrepresented to his insurance agent that he, as the "Owner" of DSW, was the driver of the DSW vehicle involved in the collision and not Shane Schulman.

65.     On November 12, 2021, DSW, through its owner Donald Lewis Schulman, fraudulently and intentionally misrepresented to AmGUARD, through NARS, that he was the driver of the DSW vehicle involved in the collision and not Shane Schulman.

66.     These fraudulent and intentional misrepresentations are material, have compromised the defense of the Claim, and have increased the risk that AmGUARD insured against.

67.     Per the plain language of the Policy's General Conditions concerning Concealment, Misrepresentation Or Fraud, the Commercial Auto Coverage Form is void if the insured, at any time, commits fraud as it relates to the Coverage Form. Further, the Coverage Form is void if DSW or any insured intentionally conceals or misrepresents a material fact concerning the Coverage Form or a claim under the Coverage Form.

68.     As a result of DSW's fraudulent and material misrepresentations regarding Shane's status as a driver and his operation of the DSW vehicle at the time of the collision that forms the basis of the Claim, the Policy is void under the plain terms of the Policy's General Conditions

16

concerning Concealment, Misrepresentation Or Fraud. As such, AmGUARD is entitled to void the Policy under the plain language of the Policy, Ala. Code § 6-5-100, *et seq*., and Ala. Code Alabama Code § 27-14-28.

69.     AmGUARD is entitled to a judicial declaration stating that the Policy is void as a result of the fraudulent and material misrepresentations and omissions made 1) in its Policy Application; 2) to the investigating officer following the accident; 3) to the insurance agent in reporting the Claim the following day; and 4) to the claims adjuster on the second day following the collision.

70.     AmGUARD is further entitled to a judicial declaration that it owes DSW no duty to defend or indemnify as to the Claim.

## COUNT III

### DECLARATORY JUDGMENT THAT AMGUARD HAS NO DUTY TO PROVIDE COVERAGE UNDER THE POLICY BECAUSE OF DSW'S FAILURE TO COMPLY WITH THE "NOTICE" AND "COOPERATION" CLAUSES OF THE POLICY

71.     AmGUARD repeats and incorporates the factual allegations contained in Background paragraphs 15 through 49 of the Complaint as though fully set forth herein.

72.     Per the plain language of the Policy, AmGUARD has no duty to provide coverage unless there has been full compliance with the "Notice" and "Cooperation" clauses of the Policy found in Loss Conditions Paragraphs A.2.a.(1) and b.(3) of Policy Section IV – Business Auto Conditions.

73.     The "Notice" clause required DSW to give prompt notice of how, when and where the "accident" or "loss" occurred.

74.     Further, the "Cooperation" clause of the Policy required DSW to cooperate with AmGUARD in the investigation or settlement of the claim or defense against the "suit."

75.     DSW's misrepresentation to the investigating officer at the accident scene that Donald Schulman was the driver of the DSW vehicle involved in the collision was false.

76.     DSW's misrepresentations to its agent and AmGUARD during the course of the reporting and investigation of the Claim, that Donald Schulman was the driver of the DSW vehicle involved in the collision, violates the "Notice" clause of the Policy. Specifically, DSW's failure to truthfully report that Shane was the driver of the DSW vehicle involved in the collision does not satisfy the requirement to fully disclose "how" the "accident" or "loss" occurred.

77.     Further, DSW's misrepresentation was also a material and substantial failure of DSW's duty and obligation under the "Cooperation" clause of the Policy to cooperate with AmGUARD as to its investigation and defense of the Claim.

78.     Importantly, DSW's misrepresentations are material, have compromised the defense of the Claim, and have increased the risk that AmGUARD insured against.

79.     Pursuant to the express terms of the Policy and applicable law, DSW's intentional failures to comply with the "Notice" and "Cooperation" clauses of the Policy, which were material in that they have compromised the defense of the Claim and have increased the risk that AmGUARD insured against, relieves AmGUARD of any duty to provide coverage for the Claim.

80.     Thus, AmGUARD is entitled to a judicial declaration that there is no duty to provide coverage for the Claim.

81.     AmGUARD is further entitled to a judicial declaration that it owes DSW no duty to defend or indemnify as to the Claim.

**COUNT IV**

**DECLARATORY JUDGMENT THAT AMGUARD HAS NO COVERAGE OBLIGATION UNDER THE POLICY'S MSC-90 ENDORSEMENT**

18

82.     AmGUARD repeats and incorporates the factual allegations contained in Background paragraphs 15 through 49 of the Complaint as though fully set forth herein.

83.     Although an apparent question of first impression within the Eleventh Circuit, a wide majority of federal courts hold that an MCS-90 endorsement issued to a non-hazardous material motor carrier of property only affords coverage when an insured vehicle was engaging in interstate commerce at the time the underlying accident occurred.  *See, e.g.*, *Lyons v. Lancer Ins. Co.*, 681 F.3d 50 (2d Cir. 2012); *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010); *Century Indem. Co. v. Carlson*, 133 F.3d 591, 595 (8th Cir. 1998).

84.     The Fifth Circuit in *Coleman*, moreover, further reached the "plain text" holding that an MCS-90 "endorsement covers vehicles only when they are presently engaged in the transportation of property in interstate commerce."

85.     At the time of the underlying accident, Shane was neither engaging in interstate commerce nor transporting any property.

86.     The MCS-90 endorsement, moreover, is unaffected by Alabama law's statutory adoption of certain Federal Motor Carrier Safety Regulations ("FMCSRs") to purely intrastate motor carriers operations.  *See generally* Ala. Code § 32-9A-2(a).  For intrastate motor carriers that transport non-hazmat property (*i.e.*, property other "hazardous materials" regulated by 49 C.F.R. Part 172, Subpart F), the Alabama Legislature for policy reasons has created an express exemption wherein "commercial motor vehicle operated in intrastate commerce which does not equal or exceed 26,001 pounds … shall be exempt from the [FMCSRs] otherwise made applicable in this state …."  *See* Ala. Code § 32-9A-2(b)(5).

87.     According to Alabama Uniform Traffic Crash Report # 1730547 (Ex. 7), the vehicle being operated by Shane at the time of the underlying accident has a "Weight Rating" of

"10,000 to 26,000 pounds."  Further, the Vehicle Schedule attached to DSW's January 14, 2021 Towing Insurance Application (part of Ex. 2) indicates the vehicle Shane was operating had a Gross Vehicle Weight of 19,500 pounds.  Such vehicle thus falls within the above exemption.

88.     Moreover, the MCS-90 endorsement affords no coverage to the extent the Policy is subject to recession or determined to be void *ab initio* and to the extent that there is other coverage available to pay any resulting judgment.

89.     Thus, AmGUARD is entitled to a judicial declaration that no MCS-90 coverage obligation is owed to the Claimants.

## RELIEF REQUESTED

WHEREFORE, AmGUARD respectfully asks for the following relief:

A.     A declaration that the Policy is void and that AmGUARD is entitled to rescind the Policy including the Business Auto Coverage Form found therein for the reasons set forth herein;

B.     A declaration that there is no coverage under the Policy including the Business Auto Coverage Form found therein for the Underlying Claims or any of the acts or omissions alleged against DSW therein for the reasons set forth herein;

C.     A declaration that the MCS-90 Endorsement is inapplicable to the underlying motor vehicle accident;

D.     Such other, further, or different relief to which AmGUARD may be entitled.

THIS the 27th day of April, 2023.

Respectfully submitted,

*/s/ Carleton "Put" Ketcham, III*
Graham R. Pulvere (asb-6800-r76p)

20

Carleton "Put" Ketcham, III (asb-6591-o46k)
*Attorneys for Plaintiff*

**Wilson Elser Moskowitz Edelman & Dicker LLP**
1500 Urban Center Drive Suite 450
Birmingham, AL 35242
Telephone: (205) 761-5175
Facsimile: (205) 709-8979
graham.pulvere@wilsonelser.com
carleton.ketcham@wilsonelser.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 27, 2023 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Alabama using the CM/ECF system, which will provide notification to all parties via their respective counsel of record:

Stephen T. Etheredge
Dustin J. Fowler
Buntin, Etheredge & Fowler, LLC
PO Box 1193
Dothan, AL 36302
(334) 793-3377
setheredge@snowhill.com
dustinjfowler@hotmail.com

Charlotte Nicole "Niki" Pierce
Dothan Law Group, LLC
The Maxwelle Building
344 North Oates Street
Dothan, AL 36303
(334) 793-4354
niki@dothanlawgroup.com

*Attorneys for Defendants Jacob Hansen, Jayme Harrison, Legara Reece and Jan Johnson*

M. Adam Jones
Jordan S. Davis
Jones Cobb Wadsworth & Davis, LLC
206 N. Lena Street (36303)
PO Box 976
Dothan, AL 36302
(334) 699-5599
adam@adamjoneslaw.com
jordan@adamjoneslaw.com

*Attorneys for Defendant Donald Shane Shulman*

J. Kaz Espy
Espy, Metcalf & Espy, P.C.
P.O. Box 6504
Dothan, AL 36302-6504
(334) 793-6288
kaz@espymetcalf.com

*Administrator ad Litem for Estate of Donald Shane Schulman*

<u>*/s/ Carleton "Put" Ketcham, III*</u>
OF COUNSEL

21