IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMGUARD INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 1:22-cv-197-ECM |
| | ) | [WO] |
| JACOB HANSEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.   INTRODUCTION**

The claims at issue arise from a car wreck involving a Donald Schulman Wrecker Service ("DSW") vehicle and Defendants Jacob Hansen ("Hansen"), Jayme Harrison ("Harrison"), Lagara Reece ("Reece"), and Jan Johnson ("Johnson") (collectively "Movants"). The insurer of the DSW vehicle, AmGUARD Insurance Co. ("AmGUARD"), alleges that Donald Lewis Schulman ("Donald"), the former owner and operator of DSW, misrepresented to officers on scene and in the insurance claim that he was the driver of the vehicle, when in fact the driver was his son, Donald Shane Schulman ("Shane").[1] AmGUARD also alleges that DSW misrepresented in its policy application that there were no drivers for the business other than Donald, when in fact DSW knew that Shane would drive for DSW as well. AmGUARD seeks a declaratory judgment that it does not have a

---

[1] The Court refers to the Schulmans as "Donald" and "Shane" not as a sign of familiarity but for clarity since they have the same first and last names.

duty to indemnify or defend DSW in the underlying state court action brought by the Movants.

Hansen, Harrison, Reece, and Johnson, move for judgment on the pleadings. (Doc. 63). The motion is fully briefed and ripe for review. For the reasons that follow, the Court concludes that the motion is due to be denied.

## II.  STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted).

## III.  JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## IV.  STATEMENT OF FACTS

The following facts are alleged in the second amended complaint (the operative complaint) (doc. 52) and, at this stage, are accepted as true.  Donald owned and operated the DSW towing business up until his death.  In January 2021, DSW submitted a Towing Insurance Application (the "Policy Application") to AmGUARD.  DSW represented in the Policy Application that Donald was the only possible driver of DSW vehicles and acknowledged that it must submit any new drivers to AmGUARD for approval prior to hiring, despite the fact that DSW knew that Shane had driven for DSW in the past and would continue to drive for DSW during the new policy period.  Donald executed the Policy Application.  In their answer, the Movants represent that they are without sufficient information to admit or deny this allegation. AmGUARD subsequently issued a Businessowner's Liability Policy (the "Policy") to DSW for the policy period from February 10, 2021, and February 20, 2022.

On November 10, 2021, Shane was driving a DSW vehicle on his way back from dropping off a vehicle for a DSW job.  The DSW vehicle rear-ended another vehicle driven by Hansen and owned by Harrison, which was then pushed into Reece's vehicle, where Johnson was a passenger.  Donald, who was in a separate car several vehicles behind the accident, told the investigating officer that he, not Shane, was the driver of the DSW vehicle involved in the accident.  Donald maintained this misrepresentation in subsequent communications with AmGUARD's insurance agent and claims adjuster.  In their answer, the Movants represent that they do not know who was driving the vehicle or whether Donald misrepresented the driver's identity.  After this discovery, AmGUARD sent DSW

3

"Reservation of Rights" letters, agreeing to defend DSW while continuing to investigate the misrepresentations.

AmGUARD's Coverage Form preconditions coverage on DSW's compliance with its duties to give prompt notice of "how, when, and where" the accident occurred and to cooperate with AmGUARD in the "investigation or settlement of the claim or defense." (Doc. 52 at 10). The Coverage Form also contains a clause deeming the Coverage Form void in the case of any related fraud or intentional misrepresentations of material facts. The Policy itself includes an Unreported Drivers Form, which states that the failure to report a new driver is a material misrepresentation. The Policy also contains a general condition that the Coverage Form is void if the insured commits fraud related to the Coverage Form.

Finally, the Policy includes a Form MCS-90 0117 ("MCS-90 Endorsement"), which purports to be in compliance "with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA)." (*Id.* at 12). The MCS-90 Endorsement imposes a payment obligation as to "any final judgment recovered against the insured for public liability resulting from negligen[t motor vehicle operation]." (*Id.*).

AmGUARD brings four claims for relief in its second amended complaint based on DSW's alleged misrepresentations made both in the Policy Application and in the subsequent claim. First, AmGUARD brings a claim for declaratory judgment that the Policy is void and should be rescinded based on the alleged misrepresentations as to Shane's status as a DSW driver in the Policy Application. Second, AmGUARD brings a

4

claim for declaratory judgment that the Policy is void or that AmGUARD does not owe coverage due to DSW's alleged misrepresentations in the Coverage Form and claim submission.  Third, AmGUARD brings a claim for declaratory judgment that it has no duty to provide coverage under the policy because of DSW's failure to comply with the "Notice" and "Cooperation" clauses of the policy.  It alleges that DSW's misrepresentations as to the driver of the at-fault vehicle constitutes a failure to provide notice of "how" the accident occurred and a failure to cooperate in the investigation and defense of the claim.  Finally, AmGUARD brings a claim for declaratory judgment that it has no duty to provide coverage for the claim under the MCS-90 endorsement because the DSW vehicle was not engaged in interstate commerce at the time of the accident, as required to trigger federal MCS-90 coverage, and it did not meet the minimum weight required to trigger Alabama's statutory endorsement of MCS-90 coverage.  In the alternative, AmGUARD claims that the MCS-90 Endorsement is voided with the rest of the Policy based on the alleged misrepresentations in the Policy Application.

## V. DISCUSSION

The Court first clarifies what can be considered in ruling on the present motion for judgment on the pleadings.  The motion, (doc. 63), states that it is based upon AmGUARD's original complaint, (doc. 1), the Movants' original answer, (doc. 8), AmGUARD's first amended complaint, (doc. 33), and the Defendants' answers to the first amended complaint, (docs. 38 and 39).  And in their motion, the Movants cite to the allegations in the original complaint, (doc. 1), rather than the second amended complaint (doc. 52).  But amended complaints supersede earlier complaints, making earlier pleadings

5

a legal nullity. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277–78 (11th Cir. 2016). Here, the operative pleadings are AmGUARD's second amended complaint, (doc. 52), and the answer to the second amended complaint, (doc. 53). The Court will consider only the operative pleadings for purposes of ruling on the motion for judgment on the pleadings (doc. 63).

The Movants, (doc. 63), then state that the "evidentiary submissions filed herein illustrate[] that there is no genuine issue as to any material fact." (Doc. 63 at 2). In reviewing a motion for judgment on the pleadings, the Court only considers "the substance of the pleadings and any judicially noticed facts." *Hawthorne*, 140 F.3d at 1370. Here, the parties rely on evidence to support their respective positions on the motion. Specifically, AmGUARD attaches to its response (doc. 68) an affidavit of the managing general agent ("MGA") for AmGUARD, an email exchange between the MGA and the insurance agent, and two "reservation of rights" letters sent by AmGUARD to DSW after the accident. (Doc. 68-1; Doc. 68-2; Doc. 68-3). In their motion, the Movants cite to the Policy, the Policy Application, a traffic accident report, and email exchanges regarding Shane's exclusion from the policy, all of which were attached to the original complaint. (*See generally* doc. 64). The operative complaint states that copies of the Policy, the Policy Application, an accident report, and email correspondence were attached to the original complaint, (doc. 52 at 2 nn.1–2, 6 nn.5–6), and the operative complaint contains excerpted portions of the Policy and Policy Application. However, the Policy, the Policy Application, the accident report, and the email correspondence are only attached in full to the original complaint. (*See generally* doc. 1).

In deciding a motion for judgment on the pleadings, the Court can only consider the "substance of the pleadings and any judicially noticed facts." *Hawthorne*, 140 F.3d at 1370. Federal Rule of Civil Procedure 10(c) allows exhibits attached to the complaint to be considered as part of the pleadings, and the Eleventh Circuit allows consideration of certain written instruments that are attached to a motion to dismiss or an answer under the "incorporation by reference doctrine" when the instrument (1) is central to the plaintiff's claim, and (2) is undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134–36 (11th Cir. 2002). Further,

> Federal Rule of Civil Procedure 12(c) contains a conversion provision which states that: "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

*Id.* at 1134 (alteration in original).  In deciding a motion for judgment on the pleadings where evidence outside the pleadings is introduced, the Court can either (1) exclude the additional evidence from consideration, or (2) consider the additional evidence, thereby converting the motion to one for summary judgment, and give the parties an opportunity to submit exhibits and brief the matter. *See id.*

The Court declines to convert the motion for judgment on the pleadings into one for summary judgment before the parties have had the opportunity to conduct discovery.  At this stage, the Court will not consider the materials attached to AmGUARD's response (doc. 68) because they are not attached to the operative complaint, and AmGUARD has not shown that they may properly be considered under the "incorporation by reference

7

doctrine." Additionally, the Court will assume without deciding that it can consider the Policy, the Policy Application, an accident report, and email correspondence which were attached to the original complaint and are expressly referenced in the operative complaint.

### A. Counts I & II: Waiver

As to Counts I and II, the Movants first contend that AmGUARD waived its right to void or rescind the Policy because it knew that Shane was driving DSW vehicles yet chose to continue coverage.[2]  Under Alabama law,[3] "when an insurer has knowledge of a fact or situation that it could use to invoke a provision of its policy that would render the policy void and worthless, but nonetheless continues to accept premium payments from its insured, it will be considered to have waived that provision and will be estopped from using that provision to deny a claim." *Ex parte Ikner*, 682 So. 2d 8, 10 (Ala. 1996) (citation omitted). However, "[a] party cannot be charged with a waiver where the party does not have, at the time of the alleged waiver, knowledge of all the material facts upon which the alleged waiver depends." *Putman Const. & Realty Co. v. Byrd*, 632 So. 2d 961, 964 (Ala. 1992) (citation omitted).  AmGUARD argues that there is nothing in the operative complaint indicating that it knew that Shane continued to drive DSW vehicles during the

---

[2] Because the allegations remain the same in both the original complaint and second amended complaint, except for the substitution of the Schulman estates as parties, the Court will still consider the Movants' arguments.

[3] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "In determining which state's law applies in a contract dispute, Alabama follows the principle of lex loci contractus, applying the law of the state where the contract was formed." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007)) (explaining that the court was being asked to interpret an Alabama insurance policy and concluding that Alabama law applied).  Here, the parties agree that Alabama law applies.

relevant policy period until AmGUARD's post-accident claim investigation. For the reasons stated below, the Court agrees.

In support of their argument that AmGUARD knew Shane was a company driver, the Movants point to the Policy Application, specifically a "loss run" table contained therein; an email exchange; and a 2020 accident report in which Shane was the driver, all of which were attached to the original complaint, (doc. 1), and referenced in the operative complaint, (doc. 52 at 6 nn.5–6). The Movants argue that these exhibits show that AmGUARD knew Shane was driving DSW vehicles when it chose to continue coverage in the new policy. (Doc. 64 at 7, 8). AmGUARD contends that it would be improper to infer AmGUARD's knowledge that Shane was driving DSW vehicles during the policy period at issue from the allegations concerning Shane's 2020 accident. AmGUARD further argues that the documents cited by the Movants fail to show that it knew Shane was driving DSW vehicles during the policy period.[4]

At this stage, neither the allegations in the operative complaint nor the documents upon which the Movants rely permit an inference that AmGUARD knew Shane was driving DSW vehicles during the relevant policy period. The operative complaint's reference to Shane's 2020 accident merely alleges that the accident occurred, not when AmGUARD received notice of the accident or what that notice entailed. Moreover, this accident occurred in 2020, which is outside the 2021–2022 policy period at issue.

---

[4] AmGUARD attached to its brief an underwriter's affidavit to contest the assertion that AmGUARD knew Shane was driving vehicles for DSW. (Doc. 68 at 5–6). As explained above, however, the Court declines to consider the underwriter's affidavit at this stage because it was not attached to the operative complaint and is not properly considered under the "incorporation by reference doctrine." *See Horsley*, 304 F.3d at 1134–36.

The "loss run" table in the Policy Application also does not help the Movants at this stage. The table consists of columns indicating the name of the insurance company, the year, and the number of losses. (Doc. 64 at 9). In the row corresponding with the year "2021," there is a "1.00" listed under "# of losses." (*Id.*). The Court cannot discern the loss to which this language refers, or what notice, if any, this loss may have provided. The table gives no other details about the loss listed. On this record, the loss run table does not permit an inference that AmGUARD knew Shane was driving DSW vehicles during the 2021– 2022 policy period, and therefore knowingly waived its right to void the Policy which was in effect at that time.

In sum, the operative pleadings do not allege or permit an inference that AmGUARD knew Shane was driving DSW vehicles when it issued the policy or before the accident investigation. Consequently, at this stage, the Court cannot conclude based on the pleadings that AmGUARD waived the relevant policy provisions.

Accordingly, the Movants' motion for judgment on the pleadings is due to be DENIED as to Counts I and II.

### B. Count III: Failure to Comply with "Notice" and "Cooperation" Clauses

In Count III, AmGUARD seeks a declaration that there is no duty to provide coverage, to defend, or to indemnify DSW because DSW failed to comply with the "Notice" and "Cooperation" clauses in the Policy. According to the operative complaint, the Policy states that AmGUARD has "no duty to provide coverage under this policy unless there has been full compliance" with the Notice and Cooperation clauses. (Doc. 52 at 10). AmGUARD alleges that the Notice clause "required DSW to give prompt notice of how,

when, and where the 'accident' or 'loss' occurred." (*Id.* at 17). Further, the Cooperation clause required DSW to cooperate with AmGUARD in its investigation and defense of the claim. (*Id.*). The operative complaint alleges that DSW's misrepresentations as to the driver of the vehicle in the claim report and subsequent investigation violated the Policy's requirement that the claimant give notice of "how" the loss occurred. (*Id.* at 18). AmGUARD also alleges that the misrepresentations constituted a "material and substantial failure of DSW's duty and obligation" to cooperate in the investigation and defense of the claim. (*Id.*).

        1.  **Notice Clause**

The Movants argue that the alleged misrepresentations do not constitute a failure to satisfy the notice requirement of "how" the accident occurred. Specifically, the Movants contend that DSW's alleged misrepresentations in the claim report and investigation are not material under the circumstances because the Policy would have covered either Shane or Donald as a driver. The Movants also argue that by AmGUARD's own account of the facts in the operative complaint, AmGUARD eventually had knowledge that Shane was driving the vehicle. The Movants contend that once AmGUARD had notice that Shane was driving the vehicle, AmGUARD no longer had reason to deny the claim based on lack of notice. The Court addresses each argument in turn.

Under Alabama law, "insurance companies have no 'obligation to investigate or pay a claim until the insured has complied with all the terms of the contract with respect to submitting claims for payment.'" *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1348 (M.D. Ala. 2012), *aff'd*, 519 F. App'x 656 (11th Cir. 2013) (citing *United Ins.*

11

*Co. of Am. v. Cope*, 630 So. 2d 407, 412 (Ala. 1993)). The Policy terms alleged in the operative complaint expressly condition coverage on DSW's fulfillment of its duties in submitting its claim under the notice clause, which amounts to a strict condition precedent under Alabama law. *See Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 266–67 (Ala. 1999) (finding language stating "[i]n a case of loss you *must* . . . submit to an examination under oath" to create a condition precedent); *Pittman*, 868 F. Supp. 2d at 1347–48 (citing *Nilsen*, 745 So. 2d at 266–67) (finding "duties after loss provisions" requiring the provision of "documents reasonably requested by the insurer" to be strict conditions precedent to coverage). "Conditions precedent to an action on a policy requiring notice of an accident have been continually held valid and enforceable by the courts of [Alabama]." *Raymond v. GEICO Cas. Co.*, 2018 WL 1900551, at *2 (N.D. Ala. Apr. 20, 2018); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Cain*, 421 So. 2d 1281, 1283 (Ala. Civ. App. 1982) (finding a requirement that a statement be filed with the insurer within thirty days to be binding); *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Teague*, 110 So. 2d 290 (Ala. 1959) (holding that a requirement that a notice be in writing was binding). As alleged, to receive coverage, DSW was required to fulfill its obligation to give prompt notice of "how" the accident occurred.

The Movants first argue that any lack of notice here is immaterial. They contend that if Donald was driving the vehicle, then he is the named insured and would be covered under the Policy. (Doc. 64 at 11). They assert that it is "unrefuted" that if Shane was driving the vehicle, then he was doing so with the permission of Donald, and is therefore covered, because he was not expressly excluded under the policy at the time of the accident. (*Id.* at 10, 11). Therefore, they argue, the alleged misrepresentation could not serve as a

12

basis for failing to comply with the notice provision. The Court disagrees. Whether Shane was covered under the Policy is a separate issue from whether the insured complied with its obligations under the Policy. Assuming without deciding that Shane was covered under the Policy, it would not resolve the issue of whether the insured complied with its notice obligations under the Policy.

To the extent the Movants argue that AmGUARD was not prejudiced by DSW's alleged misrepresentation about who was driving because AmGUARD eventually learned that Shane was driving, the Court finds this argument unavailing. In contrast to a claim for breach of a cooperation clause, "Alabama courts generally do not require a showing of prejudice . . . where an insured fails to give notice of a claim as specified by the policy." *QBE Ins. Corp. v. Blount Med. Ctr. Partners*, 2010 WL 11565124, at *6 (N.D. Ala. Apr. 19, 2010) (first citing *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 49 & n.3 (Ala. 1980); then citing *Am. Fire & Cas. Co. v. Tankersley*, 116 So. 2d 579 (Ala. 1959); then citing *Midwest Employers Cas. Co. v. East Ala. Health Care*, 695 So. 2d 1169, 1172 & n.5 (Ala. 1997)); *see also, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 535 (Ala. 2008).

At this stage, the Movants have not shown, based on the operative pleadings, that as a matter of law DSW fulfilled its notice obligations under the Policy. The Movants state that AmGUARD's interpretation of "how" the loss occurred "is a stretch, at best," but they do not discuss the interpretation further. (Doc. 64 at 9). "General rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) (citation omitted). "If the terms of an insurance policy are plain and

13

unambiguous, the interpretation of the contract and its legal effect are questions of law." *Garber v. Nationwide Mut. Ins. Co.*, 2021 WL 5811733, at *5 (N.D. Ala. Dec. 7, 2021); *Sentinel Ins. Co. v. Ala. Mun. Ins. Corp.*, 188 So. 3d 640, 644 (Ala. 2015) (finding the term "prevented" in a policy to be ambiguous and thus precluding a judgment on the pleadings). "The question whether a contract is ambiguous is for a court to decide." *Garber*, 2021 WL 5811733, at *6 (citing *Hall v. Env'tl. Litig. Grp., P.C.*, 248 So. 3d 949, 958 (Ala. 2017)).

At this stage, and on this record, the Court is not persuaded that the Policy provision requiring notice of "how" the loss occurred unambiguously does not require the insured to disclose of the true driver's identity. The word "how" means "in what manner or way." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/how (last visited Nov. 27, 2023). Common sense suggests that disclosure of the driver's identity may be required for an insured to fully comply with its obligation to provide notice of "how" an accident occurred, especially since post-loss duty provisions are designed to address the following problem: "the insured knows whether or not he caused the loss, but the insurer lacks the information necessary to decide whether to pay the claim or deny it for breach of contract." *Pittman*, 868 F. Supp. 2d at 1347. In this case, the true identity of the driver whose vehicle was involved in an accident for which the insured submitted a claim is the type of information which is unknown to the insurer but is "necessary [for the insurer] to decide whether to pay the claim or deny it for breach of contract." *See id*. The Movants' submission on this point, which contains no citation to authority, is insufficient to compel a different conclusion.

The Movants next argue that because AmGUARD eventually learned who was driving the vehicle, it no longer had reason to deny the claim based on insufficient notice. The Court is not persuaded. First, when or how AmGUARD received notice that Shane was the driver is not discernable from the pleadings. Additionally, to the extent AmGUARD's own investigation may have revealed the misrepresentation, Alabama courts have held that an insured has not complied with a policy's notice requirement solely because the insurer acquired independent notice of the claim. *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989); *Continental Ins. Co. v. Parkes*, 39 So. 204 (Ala. 1905) ("The fact that the insured's agent in this case learned of the shooting incident through the newspaper does not satisfy the requirement that written notice of the occurrence be given to the insurance company or its agents."). Indeed, AmGUARD alleges that the Coverage Form preconditioned coverage on the condition that: "you must give us or our authorized representative prompt notice of the 'accident' or 'loss'. Include: (1) How, when and where the []"loss" occurred[.]" (Doc. 52 at 10). The Coverage Form required the *insured*—or DSW—to give prompt notice of how the accident occurred. Whether AmGUARD discovered the true identity of the driver through its own investigation or another source is a separate question from whether DSW fulfilled its duty to give prompt notice under the policy. Further, AmGUARD alleges that it investigated the misrepresentations while defending DSW under a complete reservation of rights. (*Id.* at 14). To the extent the Movants argue a waiver, the operative pleadings do not allege or permit the inference that AmGUARD waived its right to deny coverage.

15

### 2. Cooperation Clause

As for the Cooperation clause, the Movants argue that even if DSW misrepresented the driver's identity, this misrepresentation was not prejudicial to the defense of the case. The Movants contend that the "undisputed facts" show that "AmG[UARD] was not deprived of its only defense," was not "hindered in conducting an investigation," and did not suffer any prejudice as a result of the misrepresentation. (Doc. 64 at 12). For the reasons stated below, the Court disagrees.

The Alabama Supreme Court has held that "[o]nly a material and substantial failure to cooperate relieves an insurer of its duty to cover and defend," which "amounts to a 'requirement of prejudice to the insurer.'" *Williams v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 416 So. 2d 744, 746 (Ala. 1982) (citing *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 48 (Ala. 1980)). However, "the ultimate question of whether or not the noncooperation is material and substantial is a question for the trier of fact." *Id.* at 747 (citing *State Farm Mut. Auto. Ins. Co. v. Hanna*, 166 So. 2d 872 (Ala. 1964)). Construing the pleadings in AmGUARD's favor, the pleadings do not allege or permit an inference that as a matter of law AmGUARD has not suffered any prejudice in their defense or investigation of the case. AmGUARD alleges that DSW misrepresented the identity of the driver of the vehicle to the officer on scene, in its claim to AmGUARD, and in the subsequent investigation. AmGUARD also alleges that these misrepresentations have compromised its defense of the claim and have "increased the risk that [it] insured against." (Doc. 52 at 18).

Further, in *Williams*, the Alabama Supreme Court affirmed a trial court's finding that the insured's misrepresentation of the driver's identity in a car crash and in the subsequent claim submission and investigation had a material and substantial effect on the action and prejudiced the insurer's defense. 416 So. 2d at 746–47 (holding that the parties' misrepresentation of the driver went to the parties' credibility as witnesses). AmGUARD has alleged these very facts in the operative complaint. Thus, the Court cannot conclude based on the pleadings that AmGUARD was not prejudiced.

Accordingly, the Movants' motion for judgment on the pleadings is due to be DENIED as to Count III.

### C. Count IV: MCS-90 Endorsement

In Count IV, AmGUARD seeks a declaratory judgment that it is not required to provide coverage under the MCS-90 endorsement. Specifically, it alleges that DSW was not engaged in interstate commerce at the time of the accident, and thus DSW is not afforded coverage under an MCS-90 endorsement. Further, Alabama's statutory adoption of certain Federal Motor Carrier Safety Regulations is not triggered unless the vehicle exceeds a certain weight. AmGUARD alleges that based on the accident report, the DSW vehicle did not meet this statutory weight minimum. In the alternative, AmGUARD argues that the MCS-90 Endorsement is void *ab initio* to the extent the policy itself is subject to rescission.

The Movants argue that the MCS-90 Endorsement is another policy provision that AmGUARD waived its right to rescind. For the reasons stated previously, at this stage the operative pleadings do not allege or permit an inference that AmGUARD had the requisite

17

knowledge for waiver. Further, the Movants do not address AmGUARD's other allegations that the MCS-90 Endorsement coverage was not triggered by this accident. These allegations also require the Court to determine questions of fact, such as the weight of the vehicle and whether it was engaged in interstate commerce in this particular job.

Accordingly, the Movants' motion for judgment on the pleadings is due to be DENIED as to Count IV.

## VI. CONCLUSION

For the reasons stated, and for good cause, it is ORDERED that the motion for judgment on the pleadings (doc. 63) is DENIED.

Done this 16th day of February, 2024.

                                  /s/ Emily C. Marks
                        EMILY C. MARKS
                        CHIEF UNITED STATES DISTRICT JUDGE